David W. Dow (#007377)
Jennifer L. Ghidotti (#033071)
**DOW LAW OFFICE**
3104 E. Camelback #281
Phoenix, Arizona 85016
Phone: 480.776.5039
Fax: 480.945.0553
Ddowlaw1@gmail.com; Jlevine@ddowlaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| KRYSTOFER LEE,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF PHOENIX, a municipality and jural entity; SEAN PENA, an individual acting under the color of law; JOHN DOES I-V, an individual(s), acting under the color of law, and JANE DOES I-V, an individual(s), acting under the color of law; XYZ CORPORATIONS; ABC LLCs<br><br>    Defendants. | Case No.  CV-20-02456-PHX-SMB<br><br>**FIRST AMENDED COMPLAINT** |

   Plaintiff, Krystofer Lee, hereby files her Complaint against Defendants and alleges as follows:

**PARTIES | JURISDICTION | VENUE**

   1.   Plaintiff Krystofer Lee ("Plaintiff") is an individual and at all relevant times, was a resident of Maricopa County, Arizona.

1

2. Defendant City of Phoenix ("COP") is a municipal and jural entity within the geographic bounds of Maricopa County, Arizona.

3. Defendant Sean Pena is an individual and at all relevant times was a resident of Maricopa County, Arizona. At all relevant times, Defendant Pena was acting in his individual capacity and in his official capacity as a Phoenix Police Officer.

4. At the time of events relevant herein, Defendant Pena was acting within the course and scope of his employment with this governmental entity.

5. Defendants John or Jane Doe are the unnamed, as-yet unidentified individuals, including but not limited to any and all police officers that were present during the incident and may be responsible, in part, for the actions/inactions described herein.

6. Defendants John or Jane Does are also the unnamed, as-yet unidentified individuals who were responsible for investigating the sexual assault of Defendant Pena's first victim ("Victim A").

7. Defendants John or Jane Does are also the unnamed, as-yet unidentified individuals who were responsible for employing and retaining Defendant Pena with the City of Phoenix, specifically Phoenix Police Department. This includes, but is not limited to those who reviewed Defendant Pena's employment Application and were responsible for determining whether Defendant Pena held the mental, psychological and/or emotional capabilities required for a position within law enforcement, or were otherwise responsible for the policies and procedures within the City of Phoenix to ensure Applicants fitness for duty as a City of Phoenix Police Officer.

8. Upon information and belief, DOES I-X, ABC Corporations I-X and XYZ LLC's are corporations, partnerships, limited liability companies, individuals or other incorporated or unincorporated associations whose true names are presently unknown to Plaintiff, but who are or may be liable to Plaintiff for the inactions and actions alleged in

Plaintiff's Amended Complaint.  If and when the true names of such fictitious defendants become known, Plaintiff will seek leave of the Court to amend her Amended Complaint to set forth their true names, capacities and relationships and request that the second Amended Complaint relate back to the date the Original Complaint was filed.  Such entities may be responsible for the actions/inactions described herein.

9. Jurisdiction and venue are proper in Maricopa County, Arizona since Defendants reside and/or caused events to occur in Maricopa County, from which the facts giving rise to this Amended Complaint occurred.

10. This court has personal and subject matter jurisdiction over the parties and this Amended Complaint.

11. This case is not subject to Arbitration.

12. Plaintiff demands a jury trial on all issues triable by jury.

**FACTS GENERAL TO ALL COUNTS**

13. On or about June 1, 2019, Plaintiff was walking by herself in the area of 23rd Ave and St. Anne Avenue, which is located in Phoenix, Arizona. Plaintiff is informed and believed this was outside of Defendant Pena's patrol area. The COP would have immediately known through its monitoring that Defendant Pena was outside of his assigned patrol area. Plaintiff is informed and believes Victim A was also sexually assaulted and harassed outside of Defendant Pena's assigned patrol area.

14. Plaintiff was approached by multiple Phoenix Police Officers, who upon information and belief were responding to an alleged "welfare check". Police, without probable cause, demanded to search Plaintiff's purse.

15. Despite the fact that Defendant Pena had a prior allegation of sexual assault against another victim ("Victim A"), the other Phoenix Police Officers left the scene leaving Plaintiff alone with Defendant Pena. Plaintiff was put in handcuffs and placed in

Defendant Pena's police vehicle with only Defendant Pena as he was driving a single man unit.

16. While Plaintiff sat in the back of the City of Phoenix's patrol vehicle, Defendant Pena sexually harassed Plaintiff when he made many remarks to Plaintiff about how pretty she was and that he likes "Black girls". Defendant Pena continued making lude and harassing comments throughout his entire encounter with Plaintiff.

17. Defendant Pena drove Plaintiff to a vacant lot located on 11th Ave and West Lynne Lane, which is located in Phoenix, Arizona. Defendant Pena removed Plaintiff's handcuffs and told Plaintiff to get into the front seat of his City of Phoenix police vehicle.

18. Defendant Pena used his position as a Police Officer to force sexual conduct with Plaintiff.

19. Defendant Pena, without consent, grabbed Plaintiff's breasts and fondled Plaintiff's breasts.

20. Defendant Pena forced Plaintiff to grab his penis and Defendant Pena told Plaintiff to masturbate his penis. In fear for her life, Plaintiff complied.

21. Defendant Pena then forced Plaintiff's head towards his penis, where Defendant Pena demanded Plaintiff to conduct oral sex. Plaintiff, in fear for her life, performed oral sex on Defendant Pena.

22. Defendant Pena then forced Plaintiff to masturbate Defendant until he ejaculated. Plaintiff complied in fear for her life and then exited the patrol vehicle.

23. After Plaintiff was out of the vehicle, Defendant Pena made harassing and intimidating comments to Plaintiff, including but not limited to that they would do this again and to meet him at the spot the following day. As Defendant Pena knew where Plaintiff lived, she was again in fear for her life.

4

24. The sexual assault and/or sexual harassment described herein occurred both while Plaintiff was in custody and after Defendant Pena released Plaintiff from his custody.

25. In November 2019, Plaintiff reported Defendant Pena to the City of Phoenix.

26. Upon information and belief, Phoenix Police Department investigated the allegations and AVL records from Pena's patrol vehicle confirmed that Defendant Pena's City of Phoenix police vehicle was located at 11th Avenue and West Lynne Lane for approximately ten minutes.

27. Upon information and belief, in November 2019, Defendant Pena was placed on Administrative Leave with the City of Phoenix.

28. On or about August 13, 2020, Defendant Pena was indicted and is currently facing numerous criminal charges for several Sexual Assaults in violation A.R.S. § 13-1406(A).

29. On or about August 13, 2020, Defendant Pena was indicted and is currently facing criminal charges for Unlawful Sexual Conduct by a Police Officer in violation A.R.S. § 13-13-1412(A).

**DEFENDANT CITY OF PHOENIX**

30. Upon information and belief, despite Phoenix's size and rate of population growth, its police department continues to face a shortage of officers on the streets.

31. Upon information and belief, with less officers patrolling, and resources spread thin, Phoenix Law Enforcement Association describes the morale within the Phoenix Police Department as low; the officers feel unsupported from the city and that their collective voice is going unheard.

32. Upon information and belief, the Phoenix Police Department has over 300 fewer officers compared to ten years ago and remaining officers are working overtime.

Thus, the structural deficiencies in the city were exacerbated by growing number of less experienced officers and shortages.

33. At all relevant times, Jeri Williams ("Williams") was the Chief of Police for the City of Phoenix Police Department ("PPD") with the ultimate authority to control and supervise and is responsible for the actions of its officers and agents. PPD, through Williams, has the authority and responsibility to establish policies, practices, customs, procedures, protocols and training for the PPD.

34. Defendant City of Phoenix, through Williams and PPD, either failed to properly hire, supervise, discipline, monitor, retain, terminate and/or train its employees and/or failed to establish policies and procedures that would prevent individuals that were not fit for duty from being hired, employed and retained as a police officer within the City of Phoenix Police Department.

35. According to publicly available information found at https://policecrime.bgsu.edu/Home/Map, between 2005-2015 the City of Phoenix employed as police officers eight (8) police officers who were arrested for sexual related offenses, one of which was on duty at the time of the sexual assault. This does not include officers who were disciplined for sexual related offenses, but not charged criminally.

36. As such, Defendant City of Phoenix's alleged policies and procedures led to Plaintiff's injuries as Defendant City of Phoenix's alleged policies or customs reflect a deliberate indifference to the constitutional rights of its inhabitants, including Plaintiff, as the City of Phoenix has historically and systemically failed to ensure that its officers are mentally, emotionally, and/or psychologically fit for duty, likely because of the need for officers.

37. Upon information and belief, Defendant Pena was hired by City of Phoenix as a Phoenix Police officer in or around 2017.

38. Upon information and belief, on August 26, 2018, nearly one year prior to Plaintiff's sexual assault and approximately one year after Defendant Pena was hired by City of Phoenix as a Phoenix Police Officer, another Victim ("Victim A") reported to Phoenix Police that she was sexually assaulted by Defendant Pena.

39. Thus, Defendant City of Phoenix has failed to recruit officers who will not commit constitutional violations on its citizens.  Defendant City of Phoenix has failed to train its employees to properly administer employment examinations to determine whether Applicants applying for employment within Phoenix Police Department are fit for duty and/or Defendant City of Phoenix has failed to implement adequate hiring policies and procedures to prevent perverse and heinous individuals like Defendant Pena from employment within City of Phoenix.

40. Upon information and belief, Victim A alleged that Defendant Pena forced oral/penile sex while she was handcuffed in the back seat of his patrol vehicle.

41. Despite Defendant City of Phoenix's knowledge of Defendant Pena having sexually assaulted Victim A, Defendant Pena maintained his employment with Defendant City of Phoenix.

42. Upon information and belief, Defendant Pena sexually assaulted a different third victim ("Victim C") in August 2019.

43. Defendant City of Phoenix knew of Defendant Pena's deplorable conduct and history of sexual misconduct as Defendant Pena had sexually assaulted at least Victim A while working in his position as a City of Phoenix Police Officer, which was eleven months prior to Defendant Pena having sexually assaulted Plaintiff.  Despite this knowledge, Defendant City of Phoenix failed to discipline Defendant Pena who was retained by Defendant City of Phoenix after Victim A's sexual assault, which caused Plaintiff's assault.

44. Additionally, despite Defendant City of Phoenix's knowledge of Victim A's sexual assault, Defendant City of Phoenix failed to properly supervise Defendant Pena as he patrolled the streets of Phoenix alone in a one-man unit. Considering the gross allegations, Defendant City of Phoenix should have, at minimum, enforced enhanced supervision and oversight. Instead, it allowed Defendant Pena to roam free as a predator in a single man unit interfacing with pedestrians.

45. City of Phoenix's failure to adequately investigate Victim A's allegations, discipline and supervise Defendant Pena empowered Defendant Pena to commit additional acts of sexual violence. Thus, Defendant City of Phoenix had a policy or custom of failing to properly supervise, investigate and discipline officers who had allegedly committed prior instances of sexual assault.

46. Defendant City of Phoenix has failed to develop adequate policies and training relating to sexual assault and harassment by its officers. It does not have appropriate further review when investigating its own officers, Defendant City of Phoenix lacks a disciplined remedial structure and Defendant City of Phoenix does not appropriately hold first line supervisors accountable for inadequate investigation or review of sexual assault and harassment.

47. Proper leadership, training (including monitoring) and oversight were ignored by the City. This pattern or practice of Constitutional violations that result in part from the structural problems.

48. City of Phoenix has failed to develop adequate policies and training relating to sexual assault and harassment by its officers, which includes but is not limited to holding supervisor's accountable for actions of their subordinates.

49. When policy does not clearly delineate supervisor responsibilities, supervisors frequently neglect it and upon information and belief there is no watch commander referred for further review and Plaintiff is aware of no cases where a first line supervisor was held accountable for the deficient investigation or review of a sexual assault and harassment.

50. Upon information and belief, there is: (1) inadequate first line review of sexual assault and harassment by officers; (2) insufficient on scene investigations; and (3) No requirement that supervisor's investigate all allegations of sexual assault and harassment.

51. Defendant City of Phoenix had prior notice of Defendant Pena's deplorable acts of sexual violence upon women in the community, yet failed to properly discipline Defendant Pena and remove Defendant Pena from his position of power as a Phoenix Police Officer.

52. Thus, Defendant City of Phoenix failed to provide appropriate leadership, training and oversight. Defendant City of Phoenix's failure to supervise patrol officers' and adequately investigate claims of sexual assault and harassment by its officers has occurred at every level, from front line supervisors (sergeant), investigation and review, to chain of commands secondary review of investigation, to final review by command staff. Supervisions must take a more active role in demanding improved reporting, more careful on scene investigations and more thorough secondary review.

53. Defendant City of Phoenix has failed to train and/or supervise its employees regarding investigating officer-involved allegations of sexual misconduct as Defendant City of Phoenix's failure to adequately investigate Victim A's allegation caused Defendant Pena to remain employed by City of Phoenix as a police officer in a single unit, which caused Plaintiff's sexual assault.

54. Defendant City of Phoenix failed to properly train and/or supervise its officers who failed to properly and thoroughly investigate Defendant Pena's first sexual assault of Victim A, including but not limited to failing to adequately ask questions, failing to subject Defendant Pena to a lie detector test or otherwise failing to adequately investigate Victim A's sexual assault.

55. Defendant City of Phoenix failed to implement adequate policies and procedures to ensure proper measures were taken to investigate Victim's A's assault, such as administering a lie detector test to Defendant Pena, to prevent perverse and heinous individuals like Defendant Pena from continuing employment within City of Phoenix.

## DAMAGES

56. Plaintiff hereby incorporates by reference all paragraphs as though fully set forth herein.

57. As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe emotional distress, for which she has sought mental health treatment/counseling.

58. As a result of Defendants' conduct, Plaintiff's emotional trauma includes, but is not limited to PTSD, panic attacks, anxiety, poor quality of sleep and depression.

59. As a direct result of Defendants' conduct, Plaintiff's relationship with her family has been negatively affected.

60. As a result of Defendants' conduct, Plaintiff has incurred medical expenses, diminution in earning capacity, lost wages future medical treatment and has developed a fear of the police.

## COUNT ONE
**Federal Civil Rights Claims Under 42 U.S.C. § 1983 (Violation of Fourteenth Amendment Substantive Due Process) –** *By Plaintiff against Defendant Pena*

61. Plaintiff hereby incorporates by reference all paragraphs as though fully set forth herein.

62. As a citizen of the United States, Plaintiff is entitled to the protection and benefit of the laws and Constitution of the United States of America.

63. The Fourteenth Amendment of the United States Constitution declares "nor shall any State deprive any person of life, liberty, or property, without due process of law." *See* U.S. Const. Amend. 14.

64. At all relevant times, Defendant Pena was a state actor whose conduct is subject to 42 U.S.C. § 1983 and the 14th Amendment of the United States Constitution.

65. Plaintiff has a liberty interest in her life and liberty.

66. The circumstances of Defendant Pena's encounter with Plaintiff shock the conscience and constitute a deprivation of Plaintiff's liberty interest in violation of the due process clause of the Fourteenth Amendment.

67. Defendant Pena was deliberately indifferent to Plaintiff's life, safety, health and integrity when without probable cause or reasonable suspicion, Defendant Pena unconstitutionally, and without probable cause, stopped Plaintiff who was walking, searched her purse and placed Plaintiff inside Defendant's City of Phoenix police vehicle.

68. Defendant Pena was deliberately indifferent to Plaintiff's life, safety, health and integrity when without Plaintiff's consent, Defendant Pena fondled Plaintiff's breasts and forced Plaintiff to engage in masturbatory penile conduct and oral sex.

69. Defendant Pena was afforded time to deliberate over whether his sexual misconduct was in violation of Plaintiff's liberty interest and despite this opportunity, Defendant Pena committed deplorable acts against Plaintiff, including fondling Plaintiff's breasts, forcing Plaintiff to engage in masturbatory penile conduct and oral sex; and, making lude and harassing comments to Plaintiff while Plaintiff was seized and after Plaintiff was no longer in custody.

70. Defendant Pena acted with a purpose to harm unrelated to any legitimate law enforcement objective.

71. As a direct and proximate result of Defendant Pena actions, Plaintiff suffered severe personal injuries as more thoroughly described herein.

72. Plaintiff's substantive due process rights were violated and she sustained damages as fully set forth herein.

## COUNT II
**Federal Civil Rights Claims Under 42 U.S.C. § 1983 (Excessive Force) –**
*Plaintiff against Defendant Pena*

73. Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

74. The acts and conduct of Defendant Pena constituted an illegal and unconstitutional use of force under the Fourth and Fourteenth Amendments.

75. As a direct and proximate result of the excessive and unreasonable force, Plaintiff sustained the damages more fully described herein.

## COUNT III
***Monell* Federal Civil Rights Claims Under 42 U.S.C. § 1983 (Excessive Force, Sexual Misconduct and Sexual Harassment) Unconstitutional Policy and Custom; Failure to Supervise & Discipline; Failure to Train; Negligent Hiring**
*Plaintiff against Defendant City of Phoenix*

76. Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

77. Prior to the June 1, 2019 sexual misconduct/sexual assault with Plaintiff, PPD routinely interacted with citizens of Phoenix and Defendant City of Phoenix was aware of an internal problem within the Department of employing individuals as Phoenix police officers who commit sexual related offenses against its citizenry.

78. Additionally, as early as August 26, 2018, which was eleven (11) months prior to Plaintiff's assault, Defendant City of Phoenix knew or should have known Defendant Pena sexually assaulted Victim A.

79. As such, prior to the June 1, 2019 sexual misconduct/sexual assault against Plaintiff, PPD knew that if it did not have adequate policies and procedures to hire, monitor, train, retain/terminate, to ensure that its officers were mentally fit for duty, and to implement policies and procedures to make sure its Officers would not commit the deplorable acts described herein, that such failure would result in the deprivation of United States citizens' constitutional rights, specifically the right to be free from sexual assault, sexual misconduct, sexual harassment, and excessive force at the hands of law enforcement officers.

80. PPD has failed to implement policies and procedures to ensure only those with the moral and character required to act as a police officers are hired, which amounts to a policy or custom of failing to hire only those who will not violate the constitutional rights of its citizenry.

81. PPD failed to train its officers on how to adequately screen potential law enforcement Applicants prior to hiring Applicants and during their employment to ensure officer fitness for duty, including but not limited to psychological, mental and emotional fitness.

82. PPD has failed to implement policies and procedures to adequately investigate allegations of sexual misconduct, failed to train and/or supervise those employees who are tasked to adequately investigate allegations of sexual misconduct by its officers, and has failed to discipline officers who are accused of sexual misconduct. This failure includes, but is not limited to failing to use a polygraph test to determine

whether Defendant lied about Victim A's assault, and its failure to mandate additional supervision, which amounts to a policy or custom of failing to employ only those who will not violate the constitutional rights of its citizenry.

83. Defendant City does not have appropriate further review when investigating its own officers nor does Defendant City appropriately hold first line supervisor was held accountable for inadequate investigation or review of sexual assault and harassment.

84. PPD has failed to implement policies and procedures to adequately terminate and otherwise discipline and remove from a position of power in law enforcement those officers who sexually assault citizens and failed to implement policies and procedures so that these officers are not retained.

85. PPD has failed to train or failed to supervise its employees to ensure proper conduct between its officers and citizens, which was evidenced by the other Phoenix police officers who left the scene and allowed Defendant Pena to ride alone with Plaintiff in his one-man unit.

86. Defendant City has failed to have adequate policies that address the risks of biased policing and govern pedestrian stops. City must ensure that its officers understand the constitutional restrictions that guide pedestrian encounters.

87. Some City policies, especially related to pedestrians' encounters, result in unlawful policing. These include negative street encounters, disproportionately affecting minorities. PPD has failed to implement mandatory training in regards to proper procedures for detention and interactions with citizens as officers may stop disproportionate people of color where no offense.

88. Defendant City of Phoenix's (1) failure to train its employees on how to property administer employment applications to determine hiring eligibility retention and fitness for duty and (2) failure to train its employees on how to properly investigate allegations of officer involved sexual related offenses amounted to a deliberate indifference to the constitutional rights of Plaintiff.

89. The deprivation of Plaintiff's constitutional rights would have been avoided if Defendant City of Phoenix did not hire or retain Defendant Pena in its employ, which would not have occurred had Defendant City of Phoenix properly trained its officers to vet, screen and investigate individuals prior to their employment with City of Phoenix and properly trained its officers on how to adequately and thoroughly investigate officer related allegations of sexual assault and harassment.

90. The pattern or practice is the product of inadequate policy, training and supervision, City fails to: (1) Properly monitor or investigate sexual assault and harassment by its officers; (2) To implement adequate policies on sexual assault and harassment by its officers; (3) Train other officers regarding sexual assault and harassment by other officers

91. Notwithstanding this knowledge, PPD final policymakers, including Williams, and therefore also Defendant City of Phoenix, made deliberate and conscious decisions to create inadequate policies and procedures, if any at all. Defendant City of Phoenix was recklessly and/or deliberately indifferent to the rights of individuals like Plaintiff.

92. Notwithstanding this knowledge, PPD's final policymakers, including its Chief of Police, and therefore also Defendant City of Phoenix, deliberately and consciously adopted unconstitutional policies of retaining police officers who have

committed sexual assaults or who were otherwise engaged in sexual misconduct, which it knew would lead to the deprivation of liberty interest and rights of individuals, including Plaintiff's.

93. Notwithstanding this knowledge, PPD's final policymakers , including its Chief of Police, and therefore also Defendant City of Phoenix, deliberately and consciously adopted unconstitutional policies and procedures of (1) failing to adequately screen and vet potential Phoenix Police Department candidates, whether by its failure to have adequate policies or procedures or failing to train those employees tasked with Phoenix Police Officer's employment; (2) failing to adequately investigate allegations of sexual misconduct, whether by its failure to have adequate policies or procedures or failing to train those employees tasked with investigating allegations of sexual misconduct of a newly hired police officer; (3) failed to adequately supervise Defendant Pena, especially after City of Phoenix was on notice of a prior sexual assault, and instead allowed Defendant Pena to patrol the streets in a one man unit.

94. Notwithstanding this knowledge, PPD final policymakers, including its Chief of Police, and therefore also Defendant City of Phoenix, deliberately and consciously adopted unconstitutional policies and/or encouraged, tolerated, or ratified unconstitutional widespread PPD practices and customs.

95. The policies or customs/practices of Defendant City of Phoenix directly and proximately caused the violation of Plaintiff's constitutional rights and other damages as more fully set forth herein.

96. Defendant City of Phoenix directly and proximately caused the violation of Plaintiff's constitutional rights and other damages as more fully set forth herein, with its encouragement, toleration, ratification, and deliberate indifference to the policies, or

patterns, practices, and customs, as well as its deliberate indifference to the need for more or different employment screening, training, monitoring, supervision, investigation or discipline that deprives individuals, such as Plaintiff, of rights, privileges and immunities secured by the Constitution or laws of the United States and Arizona.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff requests the following against all Defendants:

A. Judgment in favor of Plaintiff in an amount to be proven at trial, including compensatory damages; emotional damages; loss of enjoyment of life; loss of wages and diminution in earning capacity;

B. Pre and post judgment interest at the highest permissible rate;

C. Punitive damages in an amount to be determined at trial;

C. Incurred costs;

D. An award of attorney fees pursuant to U.S.C. § 1988(b);

D. Trial by jury as to all issues so triable; and,

E. For such relief to which Plaintiff may appear entitled and is just and proper.

DATED this 7th day of January, 2021.

                                        **DOW LAW OFFICE**

                                 By:   */s/ David W. Dow*
                                         David W. Dow
                                           Jennifer L. Ghidotti
                                           **DOW LAW OFFICE**
                                           3104 E. Camelback #281
                                           Phoenix, Arizona 85016
                                           *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing. I further certify that on January 7, 2021, I served the attached document by regular mail and email on the following parties:

John T. Masterson
Joseph E. Leverence
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix AZ, 85004
jmasterson@jshfirm.com
jleverence@jshfirm.com

Kathleen L. Wieneke
Christina Retts
WIENEKE LAW GROUP, PLC
1095 W. Rio Salado Parkway, Suite 209
Tempe AZ, 85281
Kwieneke@wienekelawgroup.com
cretts@wienekelawgroup.com

By:  */s/ Lena Groen*