Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #23798
WIENEKE LAW GROUP, PLC
1095 West Rio Salado Parkway, Suite 209
Tempe, AZ 85281
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com

*Attorneys for Defendant City of Phoenix*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Krystofer Lee,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, a municipality and jural entity; Sean Pena, an individual acting under the color of law; John Does I-V, an individual(s), acting under the color of law, and Jane Does I-V, an individual(s), acting under the color of law; XYZ Corporations; ABC LLCs<br><br>Defendants. | No. 2:20-cv-02456-SMB<br><br>**DEFENDANT CITY OF PHOENIX'S MOTION TO DISMISS** |

Defendant City of Phoenix moves to Dismiss Plaintiff's claims because: (1) Plaintiff asserts a Fourth Amendment claim and may not also assert Fourteenth Amendment claims; and (2) Plaintiffs' *Monell* claims fail as a matter of law.[1]

**I.    FACTS**

Plaintiff alleges that she was sexually assaulted by Defendant Pena on June 1, 2019, but that she did not report the contact until at least five months later, sometime in November of 2019. *See* Plaintiff's Complaint, ¶¶ 11, 20. Plaintiff alleged that Defendant Pena was

---

[1] Prior to filing this Motion to Dismiss, Defendants sent correspondence to Plaintiff's counsel outlining the arguments that are made in this pleading. In response, Plaintiff's amended the Complaint. The amendment, however, did not cure any of the issues raised in the original meet and confer correspondence.

placed on Administrative Leave when she reported and that he was both internally investigated and criminally charged. *Id*. at ¶¶ 27-29. Although not alleged in her Complaint, Plaintiff is aware that Defendant Pena was terminated.

Plaintiff alleges a prior allegation of sexual assault, made by Victim A against Pena, on August 26, 2018. She contends that the alleged assault by Victim A was reported, but provides no facts regarding whether it was investigated internally by the Phoenix Police Department, what steps were taken in that investigation, and what the outcome was. *Id*. at ¶ 26. She does not provide any facts related to whether there was any physical evidence (DNA) in the prior alleged misconduct, nor whether there is any related to her allegations.

Plaintiff provides no facts regarding Defendant Pena's hiring, or training—such as the date he graduated from the Police Academy, or the date he began working as a Phoenix officer (January 8, 2018).[2] Officers who work within the City of Phoenix are certified by AZPOST. The minimal qualifications for the recruitment, hiring, background investigation, training and retention of law enforcement officers in Arizona are established and enforced by AZPOST and statutorily defined. *See* Arizona Administrative Code, Title 13, Chapter 4. Officers are also required to take and subscribe to an oath to support the Constitution and the laws of the State of Arizona. *See* A.R.S. § 38-321.

## II. LAW AND ARGUMENT

### A. Plaintiff Cannot Assert a Fourth and Fourteenth Amendment Claim for Alleged Sexual Misconduct; only a Fourth Amendment Claim may be Asserted.

Plaintiff's allegations fall within the Fourth Amendment. *See Galindo v. City of San Mateo*, 2016 U.S. Dist. LEXIS 169630 (N.D.Cal. 2016) (noting that an allegation of sexual misconduct by a police officer during a seizure is analyzed under the Fourth Amendment and that plaintiff may not also plead a Fourteenth Amendment violation for the same conduct). Courts have regularly held that if a complaint's allegations invoke the protections

---

[2] Plaintiff alleges only that Pena was "hired" by the City of Phoenix at some time around 2017. The date that Pena was hired is different from the date he began working as a Phoenix officer due to the requirement that he attend the training as a police recruit.

of the Fourth Amendment, it will govern, regardless of a plaintiff's assertion that the Fourteenth Amendment's substantive or procedural due process protections apply. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (discussing substantive due process claim); *Fontana v. Haskin,* 262 F.3d 871, 878-879 (9th Cir. 2014) (claim of alleged sexual assault by a police officer, in a patrol vehicle, was better seen as a Fourth Amendment claim because plaintiff alleged a seizure by the police). Additionally, the damages that are available under the Fourth Amendment are no different from those under the Fourteenth Amendment. The Fourteenth Amendment claim is redundant and should be dismissed, without leave to amend.

### B. The *Monell* Claims Fail.

"[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694-95 (1978)). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). To prevail, Plaintiff must prove that the alleged constitutional violations were committed pursuant to a formal governmental policy, or a longstanding practice or custom which is the City's standard operating procedure. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Such a practice or custom, must be so persistent, widespread, and repeated as to amount to deliberate indifference to the rights of persons with whom the police come into contact. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Trevino*, 99 F.3d at 918 (liability may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy).

### *1. The Training Claim Fails as a Matter of Law.*

To establish a failure to train claim against the City, Plaintiff must identify the specific deficiency in the City's training *and* establish that the deficiency directly caused the constitutional deprivation. *See City of Canton,* 489 U.S. at 385; *Atwood v. Town of Ellington*, 427 F. Supp. 2d 136, 145 (2006). Plaintiff must also show that the City made a "conscious" or "deliberate" policy decision knowing that the alleged sexual assault would likely result. *City of Canton*, 489 U.S. at 389. Further, claims that only certain individual officers were negligently trained or supervised are not actionable against the City under § 1983. *See Brown*, 520 U.S. at 407; *Taylor v. City & Cnty. of San Francisco*, 166 F.3d 344 (9th Cir. 1999). Isolated instances of alleged training deficiencies simply do not support liability. *See Trevino*, 99 F.3d at 918; *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) ("Mere proof of errant behavior is a clearly insufficient basis for imposing liability on the County."). Thus, Plaintiff cannot rely "solely on a single occurrence of unconstitutional action by a non-policymaking employee." *McDade v. W.*, 223 F.3d 1135, 1141 (9th Cir. 2000) (citing *Davis v. City of Ellensburg,* 869 F.2d 1230, 1233-34 (9th Cir. 1989). "Only if a plaintiff shows that his injury resulted from a 'permanent and well settled' practice may liability attach for injury resulting from a local government custom." *Id*.; *see, e.g., Mueller v. Auker*, 700 F.3d 1180 (9th Cir. 2012) (four prior incidents insufficient). In other words, the City cannot be held liable absent sufficient evidence of a "program-wide inadequacy in training." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484-85 (9th Cir. 2007).

The Ninth Circuit's decision and analysis in *Flores v. County of L.A*., 758 F.3d 1154 (9th Cir. 2014). is directly on point. In *Flores*, the plaintiff alleged that, after receiving a ticket, she drove to an inspection site to clear the ticket and was sexually assaulted by a deputy sheriff. Plaintiff sued the Sheriff and the County under a *Monell* failure to train theory alleging a "failure to ensure that Sheriff's [d]eputies do not sexually assault the women that [d]eputies come into contact with." *Id*. at *1156. The plaintiff also alleged that the County was on notice of its constitutional failings based upon the criminal conviction,

of a different deputy, who committed three sexual assaults seven years earlier. Plaintiff's complaint was dismissed, for failure to state a claim, on the basis that there were insufficient facts to show a policy, practice, or custom and there was not a sufficient causal connection between the wrongful conduct and the alleged constitutional violation.

In affirming the dismissal, *Flores* court held:

> Finally, Flores's claim for failure to train fails because it is not plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Flores's sole factual allegation regarding the alleged failure to train consists in the absence of language in the Sheriff's Department Manual that would instruct deputies not to sexually harass or sexually attack women with whom they come into contact. "Where the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." *Walker v. City of New York*, 974 F.2d 293, 299-300 (2d Cir. 1993); *see also Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997). Given that the penal code prohibits sexual battery, it is not plausible that inclusion in the Manual of the language that Flores proposes would have prevented the assault on Flores. If the threat of prison time does not sufficiently deter sexual assault, it is not plausible to assume that a specific instruction not to commit sexual assault will provide such deterrence, and therefore failure to include such instruction does not constitute deliberate indifference absent a longstanding pattern of such criminal behavior. We agree with our sister circuits that "[i]n light of the regular law enforcement duties of a police officer" there is not "a patently obvious need for the city [] specifically [to] train officers not to rape young women." *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) ("Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior").

*Id.*; *See also Groom v. City of El Paso De Robles*, 2020 U.S. DIST. LEXIS 160932 (C.D.Cal. 2020) (allegation that the City failed to give instructions to report sexual assault or to not sexual assault, were insufficient as that conduct was already prohibited by the penal code and deputies are "presumed to know" it is unlawful."); *Breland v. City of Centerville, Ga.*, 2008 U.S. Dist. LEXIS 41729, 2008 WL 2233595 (M.D. Ga. May 28, 2008) ("No training is required to teach police officers not to commit sexual assaults. Sexual assault is illegal, and police officers can reasonably be expected to know, without training, that they

5

are not allowed to take sexual advantage of their prisoners"); *Lewis v. Pugh*, 2007 U.S. Dist. LEXIS 34754 (E.D. Tex. 2007) ("Indeed it hardly seems necessary that an officer would require specific training to know that rape, sexual assault, and other blatantly criminal actions are inappropriate").

Here, Plaintiff's claim fails because she cannot refute the fact that every Phoenix Police officer has successfully completed all training requirements for AZPOST certification. *See Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1123 (9th Cir. 2008), *overruled on other grounds, Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (affirming dismissal where plaintiff failed to controvert evidence that officer's training met state POST requirements); *Hillbloom v. Cnty. Of Fresno*, 2010 WL 4481770, at **11, 34 (E.D. Cal. Nov. 1, 2010); *see also Ward v. Still*, 2012 WL 37518, *13-14 (E.D. Tenn. 2012) ("If . . . police officers were certified by the POST Commission, then the issue of the adequacy *vel non* of their training is resolved."). More critically, however, is the fact that "no training is require to teach police officers not to commit sexual assaults." *See Breland*, infra. Amending the Complaint again will not change the status of the law in this regard.

### 2. The Ratification Claim Fails

Plaintiff also argues ratification based upon an allegation of failure to discipline, but Plaintiff admits that Defendant Pena was placed on administrative leave. *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010), overruled on other grounds by *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (where policymaker had the power to impose discipline but did not after unconstitutional actions, was insufficient because there was no evidence that the policymaker "made a conscious, affirmative choice to approve Blush's actions and adopt them as official policy"); *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification. Instead, a plaintiff must prove that the policymaker approved of the subordinate's act."). Although not alleged in her Complaint, she cannot dispute that Defendant Pena was terminated. She also admits that he was criminally

charged. Plaintiff does not allege any facts demonstrating affirmative agreement with or approval of Defendant Pena's alleged acts relating to her allegations.

### 3. *There are No Facts Related to Any Unconstitutional Hiring*

In resolving a hiring claim, the Supreme Court has instructed courts to "adhere to rigorous requirements of culpability and causation" to avoid imposing *respondeat superior* liability because "every injury is traceable to a hiring decision." *Brown,* 520 U.S. at 415. It explained: "Cases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause." *Id.* Thus, "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury." *Id.* at 412. "Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.*

Thus, the City cannot be held liable for hiring Defendant Pena unless Plaintiff can show that her sexual assault was a "plainly obvious consequence" of the decision to hire him. *Id*. at 414. "Th[is] 'plainly obvious consequence' standard is exceptionally stringent." *Gonzalez v. Alva*, 11-CV-2846 W WVG, 2013 WL 3795691, at *3 (S.D. Cal. July 19, 2013); *accord Young v. City of Providence ex. rel Napolitano*, 404 F.3d 4 (1st Cir. 2005) (recognizing hiring claim risks collapsing into *respondeat superior liability* "if not checked by particularly stringent standards).

Plaintiff's allegations fail based upon the reasoning set forth in *Gonzalez*, 2013 WL 3795691, at **3-4, where the court dismissed a hiring and screening claim against the city because the plaintiff did not meet the stringent "plainly obvious consequence" standard. In *Gonzalez*, police responded to a call involving an altercation between plaintiff and his brother. *Id.* at *1. When an officer approached plaintiff, he ran away and was shot with a Taser. *Id.* The plaintiff fell face-forward on the concrete, resulting in serious injuries to his face and a broken jaw. *Id.* The plaintiff alleged the city inadequately hired and screened the officer because it was aware of his violent background and character flaws, including: misconduct in past jobs; termination from a security guard position for using OC spray on

7

two individuals, in violation of store policy; concerns about his character for truthfulness, maturity, and ability to perform as a police officer; and glaring inconsistencies between his employment application and polygraph tests. *Id.* at *3. The city did not deny its awareness of these concerns when it hired him. *Id.* The court dismissed the claim, however, finding that evidence the officer "had a violent past is not enough to show he was highly likely to inflict the particular type of injury suffered by" the plaintiff, and concerns about the officer's "truthfulness and maturity" failed to demonstrate that the Taser use was a "plainly obvious consequence" of the hiring decision. *Id.* at *4. It explained that, at most, the officer's record showed that "the alleged screening and hiring [decision] may have increased the possibility that *some* constitutional violation would occur," but it did not show a "direct causal link" to the "specific constitutional injury." *Id.*; *See also Doe v. city of New York*, 2018 U.S. Dist. LEXIS 168242 (S.D.N.Y. 2018) (rejecting hiring claim in the context of sexual assaults where plaintiff alleged that the city's hiring and screening practices failed to eliminate candidates that would follow the rules, would report misconduct, and would avoid the corrupting opportunities available in a prison setting).

Unlike in *Gonzalez*, Plaintiff has not identified any "facts" related to Defendant Pena's hiring. She alleges nothing related to his pre-hire status. Instead, she simply concludes that there is liability, without identifying <u>what</u> in Defendant Pena's background that would have made him an improper candidate. *See Board of the County Comm'rs v. Brown*, 520 U.S. 397 (1997) (a department's hiring of an officer with prior criminal charges for assault and battery, resisting arrest, and public drunkenness, in addition to numerous traffic violations, did not carry the 'plainly obvious' consequence that the officer would use excessive force."). Plaintiff alleges nothing in his background, at the time of his hiring, that would have put the City on notice that the "plainly obvious consequence" of his hiring would be the alleged sexual assault of the Plaintiff. *See, e.g., Morris v. Crawford County*, 299 F.3d 919 , 925-26 (8th Cir. 2002) (dismissing hiring claim in excessive force case where correctional officer previously slapped an inmate, and two ex-girlfriends sought *ex parte* protective orders against him); *Benavides v. Wilson*, 955 F.2d 968, 974-75 (5th Cir. 1992)

(dismissing hiring claim even though officer had a psychological disorder, recent hospitalizations and prescription drug treatment because failure to research "medical histories" not deliberate indifference in hiring).

### 4. *There is No Cognizable Claim Based Upon "Officer Shortages."*

Plaintiff's Amended Complaint contains a *Monell* theory that the City of Phoenix should hire more officers and that the alleged failure to do so rendered the officers it did hire psychologically unfit for duty. The number of officers hired by the City, however, bears no relationship to the psychological profiles of officers that are hired. This illogical theory has no causal relationship to an officer who allegedly operates outside the bounds of the law that every citizen is required to follow. There are no facts alleged by Plaintiff that establish that during any of the alleged sexual assaults involving Defendant Pena, that there was any understaffing that caused Defendant Pena to engage in alleged criminal conduct.

### 5. *Plaintiff's Discipline of Supervisors Theory Fails.*

Plaintiff's conclusory contention that the failure to discipline supervising officers who investigate allegations of sexual assault and do not prove the assault happened also fails. Plaintiff does not identify any deficiency in the internal investigation process. Instead, she disagrees with the outcome of a single investigation into Victim A's allegations, which is insufficient for *Monell* liability. She contends that Victim A's allegations should have been deemed substantiated instead of deemed a he said/she said allegation. Yet, an investigatory process is not suspect simply because the outcome for a single incident is not as Plaintiff wishes. She does not identify a single prior alleged sexual assault where the investigatory process was allegedly deficient in some unidentified regard.

Next, regardless of the mechanics of the process, Plaintiff's supervisory theory fails due to causation problems. Investigatory actions always take place after the fact and, as a result, are not the but-for cause of the incident triggering the investigation.

### 6. *There is No Unconstitutional Custom and Policy*

The only facts alleged by Plaintiff relate to Defendant Pena's conduct and not any other alleged widespread activity by other unidentified officers. Plaintiff boldly claims that

the City adopted policies of retaining officers who committed sexual assaults, but identifies no other contemporaneous prior instances involving other officers. The only allegation of prior conduct is an allegation that between 2005-2015—a period ending four years before Defendant Pena's employment and three years before he began working the streets as a police officer—that **one** police officer was arrested for a sexual related offense on duty. Plaintiff then asserts that seven other officers were arrested for off-duty alleged "sexual related offenses." Yet, off-duty conduct of an unspecified nature does not evidence any policy or custom related to on-duty behavior. Nor does it evidence any toleration of improper behavior as these alleged incidents involved arrests and criminal prosecution— the opposite of condoning, approving, ratifying, or encouraging the same. As it relates to Defendant Pena, Plaintiff alleges one prior incident involving Defendant Pena occurring 11 months prior to her allegation and one occurring one month after. The incident occurring after her allegations is not relevant to whether a policy or custom existed before her alleged assault.

In *Doe v. Miami-Dade County*, 797 F.Supp.2d 1296 (S.D.Fl. 2011), the Court addressed a *Monell* claim based upon an allegation that 51 prior officers were accused of sexual misconduct in the four-year period before the Defendant officer was hired. In granting summary judgment, the Court noted that there was not "a single instance in which the County hired a police officer applicant who was known to exhibit sexual aggression issues." The Court went on to explain:

> The plaintiff attempts to impute knowledge on the County by drawing attention to the 51 instances of sexual misconduct reported over four years. But three principal considerations to cause this Court to conclude that the 51 sexual misconduct accusations are insufficient to establish deliberate indifference. For one the undisputed factual record shows that allegations of police misconduct, including sexual misconduct, automatically triggers a formal investigation by the Professional Compliance bureau. The Bureau interviews witnesses, gathers relevant documents, and prepares a written summary for review by the department's chain of command. Each time a claim of misconduct is sustained, the offending officer is punished accordingly. For two, although the County concedes that at least some of the sexual misconduct complaints were sustained, it is undisputed that many or most of the claims were, after

10

> investigation, unstained. In judging the scope or existence of a pattern of constitutional violations, the court requires more than evidence of accusations. *See, e.g., Mettler v. Whitledge*, 165 F.3d 1197, 1205 (9th Cir. 1999) ("[T]he mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force.") (citation omitted); *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("Indeed, the number of complaints bears no relation to their validity."). For three, at the hearing, counsel for the County represented there are slightly more than 3,000 sworn police officers presently employed by the County. Because of office turnover, the total number of sworn police serving at some point during the four-year span of the 51 sexual misconduct reports would have been even larger. The Court does not find that 51 sexual misconduct claims over four years—in an extremely large police force, and including many claims that were never supported—establishes a widespread pattern of constitutional abuses directly caused by the County's failure to implement different screening measures.

*Id*. at 33-34. In addition to these failures, the Court found no evidence that a more complete investigation into the officer's background would have uncovered any disqualifying data that would have "signaled propensity for sexual misconduct." *Id.* at 35. Far less than what was alleged in *Doe*, Plaintiff alleges only one on-duty arrest occurring years before Defendant Pena was even hired.

Also instructive is *Escalante v. City & Cty. of Honolulu*, 2018 U.S. Dist. LEXIS 61709 (D.Hawai'i 2018), where the Court dismissed *Monell* claims relating to an off-duty assault perpetrated by an officer. The plaintiff alleged that the officer had a history of disciplinary issues, the City had a "code of silence" that encouraged the behavior by failing to combat it, that the City failed to limit the defendant officer's encounters with potential victims of excessive force. In dismissing the claim, the Court noted that—even assuming allegations of lax discipline and inadequate policies of reporting officer misconduct—there was no plausible causal link between the claimed policies, training, and supervision and the alleged conduct. *Id*.

Like *Doe* and *Escalante,* Plaintiff has not alleged facts sufficient to support a claim of an unconstitutional policy and custom.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed.

DATED this 21st day of January 2021.

                WIENEKE LAW GROUP, PLC

        By:   */s/ Christina Retts*
                Kathleen L. Wieneke
                Christina Retts
                1095 West Rio Salado Parkway, Suite 209
                Tempe, AZ 85281
                *Attorneys for Defendant City of Phoenix*

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

>David W. Dow
>Jennifer L. Ghidotti
>DOW LAW OFFICE
>3104 E. Camelback Road, Suite 281
>Phoenix, AZ 85016
>*Attorneys for Plaintiff*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following,

By: */s/ Mica Mahler*